# IN THE STATE OF WISCONSIN
## CIRCUIT COURT FOR MILWAUKEE COUNTY

---

AKIL K. CARTER;
PAULETTE H. BARR;
SANDRA K. ADAMS;
      c/o Attorney Joy Bertrand
      PO Box 2734
      Scottsdale, AZ 85252
      (As to all Plaintiffs)
      PLAINTIFFS,

v.                       Case No.

CITY OF WAUWATOSA;
      7725 W. North Ave.
      Wauwatosa, WI 53213
CITY OF WAUWATOSA POLICE
CHIEF BARRY WEBER;
      1700 N. 116th St.
      Wauwatosa, WI 53226;
CITY OF WAUWATOSA POLICE OFFICER
PATRICK KAINE
      1700 N. 116th St.
      Wauwatosa, WI 53226;
CITY OF WAUWATOSA POLICE OFFICER
LUKE VETTER
      1700 N. 116th St.
      Wauwatosa, WI 53226 ;
CITY OFWAUWATOSA POLICE OFFICER
NICOLE GABRIEL
      1700 N. 116th St.
      Wauwatosa, WI 53226;
CITY OF WAUWATOSA POLICE OFFICER
DEREK DIENHART
      1700 N. 116th St.
      Wauwatosa, WI 53226;
JOHN DOES 1-3 and JANE DOES 1-3

(addresses to be determined);
**DEFENDANTS.**

---

## COMPLAINT FOR CIVIL DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF
## (JURY TRIAL DEMANDED)

---

NOW COME the Plaintiffs, Akil K. Carter, Paulette H. Barr, and Sandra K Adams, by their attorney, Joy Bertrand, to allege this complaint against the City of Wauwatosa Police Department; Wauwatosa Police Officer Patrick Kaine; City of Wauwatosa Police Officer Luke Vetter; City of Wauwatosa Police Officer Nicole Gabriel; City of Wauwatosa Police Office Derek Dienhart; John Does 1-3; and Jane Does 1-3.

## INTRODUCTION

1.      This civil action is brought under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, as well as the State of Wisconsin Constitution and State of Wisconsin common and statutory law. This action seeks to redress the personal injury inflicted upon the Plaintiffs, each of whom is a citizen of the United States and a resident of Wisconsin.

## JURISDICTION AND VENUE

2.      Pursuant to Wis. Stats. Sect. 753, jurisdiction of this civil matter is properly before the Circuit Court.

3. Venue in this Circuit Court is proper, because the underlying acts of this complaint took place in Milwaukee County, Wisconsin.

## PARTIES

4. The Plaintiff, Akil Carter, presently resides in Milwaukee, Wisconsin. During all times relative to the incidents set forth in this Complaint, the Plaintiff resided in the City of Milwaukee, County of Milwaukee, State of Wisconsin.

5. The Plaintiff, Paulette H. Barr, presently resides in Menomonee Falls, Wisconsin. During all times relative to the incidents set forth in this Complaint, the Plaintiff resided in the Menomonee Falls, County of Waukesha, State of Wisconsin.

6. The Plaintiff, Sandra K. Adams, presently resides in Menomonee Falls, Wisconsin. During all times relative to the incidents set forth in this Complaint, the Plaintiff resided in the Menomonee Falls, County of Waukesha, State of Wisconsin.

7. The City of Wauwatosa is a political subdivision of the State of Wisconsin, organized under the existing laws of Wisconsin, whose principal offices are located at 7725 W. North Ave., Milwaukee, Wisconsin 53213.

8. Defendant City of Wauwatosa ("Wauwatosa") is a municipal entity in the State of Wisconsin. Acting through its police department, Wauwatosa is responsible for the training, supervision and discipline of police officers;

adopting, implementing and enforcing policies and practices; and ensuring that the treatment of citizens complies with the United States Constitution and other federal, state, and local laws.

9.    In addition, at all relevant times, Wauwatosa was responsible for ensuring that all Wauwatosa Police Department (hereinafter WPD) personnel obey the laws of the United States. The City receives a substantial amount of federal financial assistance for law enforcement activities.

10.    Wauwatosa is liable for the harm alleged herein, and pursuant to Wis. Stat. § 895.46(1)(a), Wauwatosa is required to pay or indemnify all judgments, including compensatory and punitive damages, attorney's fees and costs that may be awarded against its officials, employees and agents.

11.    On information and belief, Barry Weber is a resident of Milwaukee County, Wisconsin and is the Wauwatosa Chief of Police.

12.    Chief Weber and exercises supervisory authority over all WPD officers and operations. He is the final policymaker with respect to law enforcement activities and promulgation of WPD standard operating procedures, rules, and guidelines.

13.    On information and belief, Patrick Kaine is a resident of Milwaukee County, Wisconsin.

14.    On information and belief, Luke Vetter is a resident of Milwaukee County, Wisconsin.

4

15.    On information and belief, Nicole Gabriel is a resident of Milwaukee County, Wisconsin.

16.    On information and belief, Derek Dienhart is a resident of Milwaukee County, Wisconsin.

17.    John Does 1-3 and Jane Does 1-3 are Wauwatosa Police Department officers, whose identities will be determined via discovery in this matter, who also failed to intervene and stop Officers Kaine, Vettner, Gabriel, and Dienhart, and other officers from engaging in the unlawful action alleged in this complaint.

## SUPPORTING FACTS

18.    This case is rooted in a September 2, 2018 car stop at approximately 112th St. and Burleigh in Wauwatosa, Wisconsin.

### The City of Wauwatosa's Historic Racial Divide

19.    The City of Wauwatosa is a suburb directly west of Milwaukee.

20.    For one hundred years, Wauwatosa sub-divisions included racially-restrictive covenants. Starting in 1919, the Washington Highlands subdivision included covenants that prohibited People of Color from owning or occupying residential property within the subdivisions' boundaries.[1]

---

[1] "Racially Restrictive Covenants: The Making of All-White Suburbs in Milwaukee County," Metropolitan Integration Research Center, 1979, at available at 2

21.     After World War II, seven Wauwatosa subdivisions developed between 1945-49 excluded African-American families. Two additions created in the 1950's, six years after the Supreme Court's ruling against government enforcement of racially restrictive covenants, still provided twenty-year prohibitions against black ownership or occupancy of homes in their subdivisions.[2]

22.     In Wauwatosa, some of these racially-restricted covenants had termination dates reaching into the 1980s.[3]

23.     Excluding parkway systems, county grounds, country clubs, and industrial land, historically, approximately half of Wauwatosa property was encumbered with racially restrictive covenants.[4]

24.     Some Wauwatosa racially-restricted covenants had automatic renewals, allowing them to continue into perpetuity.[5]

---

http://mediad.publicbroadcasting.net/p/wuwm/files/raciallyrestrictivec ovenants_milwaukee_area.pdf?_ga=2.3396599.617390194.1563650754- 1869488855.1546738305 (last visited July 19, 2019).

[2] *Id*. at 3.

[3] *Id*. at 2.

[4] *Id*.

[5] *Id*.

25.     While Milwaukee County is 52.7% Caucasian and 26.4% African American,[6] Wauwatosa is 85.5% and 4.8% African American.[7]  In the past three years, the Wauwatosa Police Department has been involved in at least two other excessive-use-of-force incidents on African American young men.[8]

**The September 2, 2019 Vehicle Stop of this Family**

26.     Mr. Carter is a young, African-American man, who was riding in a car with two Caucasian women: Sandra Adams and Paulette Carter.

27.     Sandra Adams was the driver of the vehicle.

28.     Mr. Carter's grandmother, Paulette Barr, was riding in the front passenger seat of the vehicle.

29.     Ms. Adams and Ms. Barr are Caucasian.

---

[6] Statistical Atlas, Milwaukee County, Wisconsin, Race and Ethnicity, available at https://statisticalatlas.com/county/Wisconsin/Milwaukee-County/Race-and-Ethnicity (last visited July 20, 2019).

[7] Statistical Atlas, Wauwatosa, Wisconsin, Race and Ethnicity, available at https://statisticalatlas.com/place/Wisconsin/Wauwatosa/Race-and-Ethnicity (last visited July 20, 2019).

[8] Kathie Crowther, "Family of Man Shot by Wauwatosa Officer Seeks Answers," July 5, 2016, WTMJ, available at https://www.tmj4.com/news/local-news/family-of-man-shot-by-wauwatosa-officer-demands-answers (last visited August 9, 2019); Christina Zhao, "White Wisconsin Officer Punches Black Youth in Face in Mall Parking Lot," Newsweek, May 14, 2018, available at https://www.newsweek.com/video-white-wisconsin-officer-punches-black-youth-face-mall-parking-lot-923713 (last visited August 9, 2019).

30.     Ms. Barr was in the front passenger seat. Mr. Carter, who is Ms. Barr's grandson, was riding in the back seat of the vehicle.

31.     Officer Kaine ordered Mr. Carter out of the vehicle, while Officer Kaine had his firearm drawn.

32.     The other officers named in this Complaint – Vetter, Gabriel, and Dienhart -- joined Officer Kaine during the stop.

33.     Officer Kaine ordered Mr. Carter out of the vehicle, while Officer Kaine had his firearm drawn. Several other Wauwatosa police officers joined Officer Kaine during the stop. Mr. Carter was ordered to the ground and then detained by Wauwatosa officers. None of these citizens were free to leave.

34.     Each one of these citizens were detained, despite a dearth of any indication that any of them had broken or were about to break any law.

35.     None of these citizens were free to leave.

36.     Mr. Carter was ordered to the ground, handcuffed, and detained by Wauwatosa officers.

37.     Mr. Carter was unarmed.

38.     The officers had no reason to believe that Mr. Carter was armed.

39.     Officer Kaine has claimed that he had been "flagged down" by unidentified, phantom witnesses, who told him two African-American males had hijacked a blue Lexus.

40. Defendant Kaine has stated in reports that the phantom witness was an African-American male and that he was driving a blue Chevrolet with an African-American woman.

41. While Wauwatosa equips its patrol vehicles with cameras and while the department keeps records *via* CAD and audio recording of the officers' activity, the department has disclosed no information about when this flagging down occurred, where, by whom, regarding what.

42. Despite reportedly having the name and phone number of the phantom witness, Wauwatosa has never disclosed this person to the Plaintiffs, despite their request, *inter alia*, for:

> All records pertaining to any "tip" from any person regarding the Lexus vehicle in the above-described stop being involved in any crime; any and all facts in support of reasonable suspicion to stop the vehicle; all facts regarding the stop of the vehicle; all facts regarding the basis to order the African-American male out of the vehicle an place him in a squad car.

43. When the Plaintiffs asked Chief Weber for a formal investigation of the incident, he refused.

44. At the time of the events complained of herein, the Plaintiffs had a clearly established constitutional right under the Fourth Amendment to be secure in their persons against unreasonable seizures.

45. Any reasonable law enforcement officer knew or should have known of this clearly established right.

46.     Defendants Kaine, Vettner, Gabriel, and Dienhart did not at any time have probable cause, reasonable suspicion or any other legally valid basis to believe that anyone in Ms. Adams' vehicle had committed or was committing any violation of law.

47.     There was no warrant authorizing the seizure of the Plaintiffs. No legally recognizable exigent circumstances existed that would have justified or permitted Defendants Kaine, Vettner, Gabriel, and Dienhart's seizure of them.

48.     The Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

49.     Defendants Kaine, Vettner, Gabriel, and Dienhart's actions were undertaken intentionally, maliciously, willfully, wantonly and/or in reckless disregard of the Plaintiffs' federally protected rights.

50.     As a direct result of the Defendants' unlawful seizure, the Plaintiffs sustained damages, including, among others, experiencing unnecessary and physical pain and severe emotional pain, distress, suffering, loss of enjoyment of life, and continues to be damaged as alleged herein.

51.     The unlawful acts and omissions of each defendant were the legal and proximate cause of the Plaintiffs' damages.

52.    At all times relevant to the claims in this complaint, Defendants Kaine, Kettner, Gabriel, and Dienhart acted under color law and within the scope of their employment as law enforcement officers for Wauwatosa.

## PLAINTIFFS' CAUSES OF ACTION AGAINST THE DEFENDANTS
### Count I
### Violations of the Plaintiffs' Civil Rights Under 42 USC § 1983.

53.    The Plaintiffs reallege Paragraphs 1 through 52, above, as if fully realleged herein.

54.    At all times relevant herein, the Defendants named in this complaint, are "persons" for purposes of 42 U.S.C. § 1983 and acted under color of law to deprive the Plaintiffs their  constitutional and civil rights.

55.    At all times relevant herein, the officers acted within the scope of their employment and under the color of laws, statutes, regulations, customs, ordinances, policies, and usage of the State of Wisconsin.

56.    The above-mentioned conduct of the Defendant Officers was unlawful, extreme, malicious, outrageous, and/or intentional.

57.    The above-mentioned conduct was intended to cause the Plaintiffs harm and such conduct was the cause of the personal injuries and damages sustained by the Plaintiffs. .

### Count 2
### *Monell* Liability

58.     The Plaintiffs reallege Paragraphs 1 through 52, above, as if fully realleged herein.

59.     The above-described actions of the Defendants occurred as a direct result of a failure on the part of the Defendants, the Wauwatosa Police Department, and the City of Wauwatosa to adequately train, supervise, and discipline its employees.

60.     The above-described inadequate training and supervision constituted an official policy of the Defendants, the Wauwatosa Police Department and the City of Wauwatosa.

61.     Conducting vehicle stops and detaining persons is a usual and customary activity of the Wauwatosa Police Department.

*Failures to Train, Discipline, and Supervise*

62.     The above-mentioned failures to adequately train, discipline, and supervise its police officer employees, and the acts and omissions of the Defendant, City of Wauwatosa, by its policymakers, were a direct and proximate cause of the injuries and damages to the Plaintiffs.

63.     The above-mentioned inadequate training, discipline, and supervision constituted an official policy of the City of Wauwatosa.

64.     The failure of the Defendant, City of Wauwatosa, to adequately train, discipline, and supervise its police officer employees demonstrates a deliberate

indifference on the part of the City of Wauwatosa and it policymakers, as to whether the failure to adequately train, discipline, and supervise its police offer employees would result in a violation of the constitutional and civil rights of persons, to include the Plaintiffs.

*Policies and Customs of Condoning Racial Profiling in Traffic Stops and Rights Violations*

65.    The Plaintiffs reallege Paragraphs 1 through 45, above, as if fully realleged herein.

66.    The acts of the Defendants, Police Officers Kaine, Vettner, Gabriel, and Dienhart, including the conducting of racially-motivated vehicle stops and seizures of vehicle occupants, was done in accordance with the Defendant, City of Wauwatosa's, *de facto* policy, regulation, decision, or custom condoning racially-motivated vehicle stops and occupant seizures, and/or violating persons' constitutional and civil rights effectuating vehicle stops. That these *de facto* policies were officially adopted, expressly or implicitly, and promulgated or practiced by the Defendant, City of Wauwatosa. As such, they constitute a *de facto* governmental custom for the Defendant, City of Wauwatosa, even though such custom may not have received written formal approval and even though such de facto policies were inconsistent with or violated other written policies.

67.    This official or *de facto* policy and/or custom of condoning racial profiling in conducting traffic stops and occupant seizures permitted, encouraged,

tolerated, or ratified the actions of the Defendants, all in malicious or reckless disregard or with deliberate indifference regarding the constitutional and civil rights of the Plaintiffs.

68.     That the above-mentioned official or *de facto* policy and/or custom of condoning utilizing excessive force and/or violating persons' constitutional and civil rights arose or was allowed to continue as a result of, among other things, the following acts and omissions Defendant, City of Wauwatosa, and its Policymakers: failing to adequately train, supervise and control its police officers; failing to adequately punish and discipline prior instances of similar conduct by its police officers; failing to have sufficient policies and practices in existence to adequately deal with the understanding and actions of off-duty police officers when acting within the scope of their employment and under color of law as police officers; failing to adequately and fully investigate and gather sufficient evidence at the scene of police officer-involved incidents to allow for a determination of those police officers involved being identified and potentially disciplined or criminally prosecuted; allowing a police force atmosphere that promotes cavalier attitudes in conduct, and leading to a belief that police actions will never be scrutinized and/or prosecuted; and encouraging "misplaced loyalties" and a "code of silence" among police officers

in refusing to cooperate with officials investigating unlawful actions by police officers.

69. WPD and Wauwatosa further attempted to defend its conduct in this incident, by posting limited video footage on social media, to include depicting Mr. Carter in the back of the squad car, handcuffed, although he had committed no crime.[9]

70. That the "wide spread practice" of cavalier attitudes in conduct; encouraging, permitting, and failing to take genuine or adequate measures to prevent repeated instances of race-based vehicle stops and occupant seizures; the encouragement of a "code of silence" constitute a custom or usage that, although not officially authorized, reflect practices that were so well-settled that they virtually constitute official policy.

71. The policymakers of Defendant Wauwatosa had actual and/or constructive knowledge of the existence of each and every one of the above-mentioned policies and customs and had a deliberate as to whether or not such polices and customs would continue.

---

[9] See, e.g., "Information Regarding Traffic Stop on September 2, 2018," Wauwatosa Police Department Twitter Feed, available at https://twitter.com/wauwatosapd/status/1037750708584497152?lang=bg (last visited July 20, 2019).

72.     Each and every one of the above-mentioned policies and customs was a direct and proximate cause of the violations of the constitutional and civil rights of the Plaintiffs.

73.     Chief Weber's ongoing defense of this stop as reasonable and professional and Chief Weber's refusal to even conduct the requested investigation of this stop are evidence of the WPD's ratification of a policy encouraging WPD officers to conduct race-based, unsubstantiated vehicle stops.

## Count 3
## Negligence

74.     The Plaintiffs reallege Paragraphs 1 through 52, above, as if fully realleged herein.

75.     If the City's explanation for these events is to be believed, then Officer Kaine and his colleagues were negligent in stopping a vehicle based only upon being waived-down by unknown persons.

76.     The officers further were negligent in detaining the vehicle's occupants, particularly after Ms. Barr got out of the vehicle and informed the officers that Mr. Carter was her grandson and that no crime was being committed.

## Count 4
## Violation of Due Process Under the Wisconsin Constitution

77.     The Plaintiffs reallege Paragraphs 1 through 52, above, as if fully realleged herein.

78. The Wisconsin Constitution provides:

> All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed.

79. In detaining the Plaintiffs, based on Mr. Carter's race, the officers violated this provision of the Wisconsin Constitution.

## Count 5
## Violation of Right to be Free of Unreasonable Searches and Seizures Under the Wisconsin Constitution

80. The Plaintiffs reallege Paragraphs 1 through 52, above, as if fully realleged herein.

81. The Defendants' conduct constitutes a violation of Art. 1, Sect. 11 of the Wisconsin Constitution, which provides, "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

82. The entirely baseless seizure of the Plaintiffs by the Defendants violated this provision of the Wisconsin Constitution and their right to be free secure in their persons and effects.

## Count 6
## Right to Equal Treatment Under the Wisconsin Constitution

83. The Plaintiffs reallege Paragraphs 1 through 52, above, as if fully realleged herein.

84. In singling out Ms. Adams' vehicle because of Mr. Carter's race, Officer Kaine and his colleagues' conduct constitutes a violation of Art. 1, Sect. 1 of the Wisconsin Constitution.

### Count 7
### Negligent Infliction of Emotional Distress

85. The Plaintiffs reallege Paragraphs 1 through 52, above, as if fully realleged herein.

86. The Defendants' conduct constitutes negligent infliction of emotional distress for each of these citizens.

87. Akil Carter felt terror when he ordered out of his grandmother's friend's car at gunpoint. He re-lives that terror every day.

88. Her African-American grandson being shot by the police of is one of Ms. Barr's greatest fears. She watched her grandson ordered out of the car at gunpoint and detained in a police squad, even though she was telling the officers no crime had occurred.

89. Sandy Adams further felt great fear as she watched this entire scene unfold and as she was unable to even leave in her own car.

90. The Defendants' negligent conduct caused this severe emotional distress.

### Count 8

## Negligent Hiring, Training, and Promotion

91.    The Plaintiffs reallege Paragraphs 1 through 52, above, as if fully realleged herein.

92.    The City has insisted that the Defendants' conduct and his in stopping this vehicle based only on the "flagging down" by one, possibly two unknown witnesses, with no further corroboration, separating and detaining the one African-American male at gunpoint in police vehicle, and detaining the two other occupants, is consistent with the officers' training and the city's policies.

93.    Therefore, the City is responsible for the negligent hiring, training, and promotion of its officers, which caused this incident.

## Count 9
## False Imprisonment

94.    The Plaintiffs reallege Paragraphs 1 through 52, above, as if fully realleged herein.

95.    Officer Kaine and each of the officers are liable for the false imprisonment of each of these citizens.

96.    The Defendants' seizure of each Plaintiff constituted a restraint on each of their physical liberty.  The Defendants lacked any legal basis for this restraint of the Plaintiffs' physical liberty and was, thus, unlawful.

## Count 10
## Intentional Infliction of Emotional Distress

97. The Plaintiffs reallege Paragraphs 1 through 52, above, as if fully realleged herein.

98. This stop and the ordering-out of the lone African-American passenger at gunpoint never should have happened.

99. Once Ms. Barr told the officers that this was not a carjacking in progress – if not before – this stop became more than a misunderstanding.

100. This stop and detention were intentional acts, intended to intimidate Mr. Carter, Ms. Barr, and Ms. Adams. The result has been extreme emotional distress and anxiety for each of them.

## DAMAGES

WHEREFORE, the Plaintiffs pray this court award of judgment against the Defendants for the above-described violations of their constitutional rights:

101. In favor of the Plaintiffs, and against the above-named Defendants, joint and severally, for compensatory and special damages, in an amount which will fairly and reasonably compensate the Plaintiffs for their past and future medical care; their past and future lost wages; for their past and future pain and suffering, and disability; and for the violation of their civil rights, as set forth above, in an amount to be determined at trial in this matter.

102. In favor of the Plaintiffs and against each of the above-named Defendants, jointly and severally, for punitive damages for the injuries, damages, and

violation of the Plaintiffs' rights, as set forth above, in an amount to be determined at a trial in this matter.

103.    For declaratory, injunctive, and other equitable relief, reforming the Defendant City of Wauwatosa policies, practices, and procedures to prevent like actions and harms in the future.

104.    For all costs, disbursements, and attorney fees, pursuant to 42 U.S.C. § 1988 and for other such relief as the Court deems just and reliable.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**

Respectfully submitted this Ninth day of August, 2019.

s/Joy Bertrand

Joy Bertrand
Attorney for Plaintiffs

Joy Bertrand, Attorney
Wisconsin Bar Number 1029483
PO Box 2734
Scottsdale, AZ  85252-2734
Office – 602-374-5321
Fax – 480-361-4694
Email – joyous@mailbag.com
www.joybertrandlaw.com