UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| AKIL K. CARTER, PAULETTE H. BARR, and SANDRA K. ADAMS,<br><br>                      Plaintiffs,<br><br>v.<br><br>CITY OF WAUWATOSA, BARRY WEBER, PATRICK KAINE, LUKE VETTER, NICOLE GABRIEL, DEREK DIENHART, JOHN DOES 1–3, and JANE DOES 1–3,<br><br>                      Defendants. | Case No. 19-CV-1422-JPS<br><br>**ORDER** |

This case comes before the Court on Defendants' motion for sanctions and dismissal, ECF No. 74, and Plaintiffs' motion in limine to preclude statements attributed to Carl Anderson ("Anderson"), a critical witness for the defense, ECF No. 80. The motion for sanctions is fully briefed and, for the reasons explained below, will be denied. The motion in limine is, ostensibly, fully briefed: Plaintiffs filed the motion on March 3, 2022 and Defendants filed a response on March 24, 2022. On April 7, 2022, when a reply would have been due, *see* Civ. L.R. 7(c), Plaintiffs filed a second motion in limine that addresses the arguments raised in Defendants' response, ECF No. 82. For the reasons explained below, both motions will be denied.

1.     **RELEVANT BACKGROUND**

This case is very old, and the parties' arguments presume familiarity with the facts of the case, so the Court will summarize the allegations in the complaint before delving into the parties' discovery squabbles. On

September 2, 2019, police officer Patrick Kaine ("Kaine") pulled over Plaintiffs' car, which was traveling through Wauwatosa, a racially segregated neighborhood. Kaine detained the vehicle because an unknown third-party witness told him that "two African-American males had hijacked a blue Lexus." ECF No. 1-2 ¶ 39. Kaine described the unknown witness as an "African-American male" who was "driving a blue Chevrolet with an African-American woman." *Id.* ¶ 40.

When Kaine pulled over Plaintiffs' car, he discovered that Sandra Adams ("Adams"), a Caucasian woman, was the driver. Paulette ("Barr"), who is also Caucasian, was in the passenger seat. Akil Carter ("Carter"), Barr's grandson, was in the back seat of the car. Carter is African American. After Kaine stopped the car, several other officers, including Luke Vetter ("Vetter") swarmed to the scene to detain the car's occupants. The police ordered Carter to the ground and handcuffed him before subjecting him to interrogation. Plaintiffs now bring suit on several grounds, including that the police seized and searched Plaintiffs without reasonable suspicion or probable cause, in violation of their rights under the Fourth Amendment.

Plaintiff's theory of the case is that Kaine acted not on the basis of an anonymous tip, but from racial prejudice. However, about a week after the search and seizure, the anonymous tipster contacted the police department and identified himself as the tipster. Defendants identified Anderson in their initial disclosures, and later provided his contact information in response to a discovery request. ECF Nos. 77-9 at 2; 77-10 at 2–3. Thus, Plaintiffs knew, early on, that this person existed.

The Court entered a trial scheduling order on October 25, 2019, in which it set a dispositive motion deadline of June 1, 2020. ECF No. 12. However, the Court extended this deadline and various response deadlines

due to the COVID-19 pandemic and a series of events that befell Plaintiffs' counsel. *See e.g.*, ECF No. 54 (granting Plaintiffs a fourth extension of time to file an opposition to summary judgment and reply in support of their motion for summary judgment and ordering the parties to meet and confer before filing the motion to create a single, agreed-upon statement of facts).

On September 28, 2021, the Court denied the parties' competing motions for summary judgment without prejudice because the submissions contained disputed material facts. ECF No. 65. In this order, the Court thoroughly described its dispositive motion protocol. *Id.* On November 18, 2021, the Court addressed the parties' questions and concerns at a status hearing. ECF No. 70. Consistent with Federal Rule of Civil Procedure 56, the crux of this Court's dispositive motion protocol is an entreaty that parties only file motions for summary judgment when there are no genuine disputes of material fact.

The parties, faced with Federal Rule of Civil Procedure 56's demanding requirements, instead of preparing the case for trial, devolved into clumsy motion practice, flinging threats of sanctions at one another in the hopes that the case may be summarily resolved another way. For example, Defendants ask the Court to dismiss this entire matter as a sanction for Plaintiffs' counsel's failure to complete the meet and confer process and because Plaintiffs' counsel did not cite to disputed facts in the record in her opposition to Defendants' proffered statement of facts. *See* ECF No. 75 at 10–12. Plaintiffs' counsel, on the other hand, hopes that the Court will exclude three witnesses' testimony on "hearsay" grounds, even though none of the testimony is hearsay. ECF No. 80.

## 2. MOTION FOR SANCTIONS

### 2.1 Legal Standard

Defendants filed a motion for dismissal as a sanction under Federal Rules of Civil Procedure 41(b) and 56(e). Federal Rule of Civil Procedure 41(b) explains that "[i]f a plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Similarly, Federal Rule of Civil Procedure 56(e) explains,

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

If neither rule requiring dismissal as a sanction is on point, the district court has "inherent power in assessing as a sanction for a party's bad-faith conduct attorney's fees and related expenses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 35 (1991) (finding no abuse of discretion in a district court using its inherent power to sanction where a party perpetrated fraud on the court, filed false pleadings, and engaged in a series of litigation tactics designed to harass and frustrate the ends of justice). However, "[d]efault judgment is strong medicine for discovery abuse." *Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014). Courts should exercise restraint in granting default judgment as a sanction "*only* where there is a clear record of delay or contumacious conduct, . . . where other less drastic sanctions have proven

unavailing, . . . or where a party displays willfulness, bad faith, or fault." *Id.* (internal citations and quotations omitted); *see also Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003) (dismissing a case under Rule 37 where a plaintiff filed a lawsuit under a false name, perpetuated the lie under oath and delayed in providing his true identity, and never disclosed his full arrest record despite interrogatories and a court order).

### 2.2 Analysis

The bases for Defendants' motion are that, first, Plaintiffs refused to meet and confer in order to create a single, agreed-upon statement of facts, in violation of the Court's orders on August 16, 2021 and September 28, 2021; second, Plaintiffs have not complied with Federal Rules of Civil Procedure 56(b) and (c), which require the nonmovant to oppose each proposed fact with specific references to affidavits, declarations, or other portions of the record; and third, that Plaintiffs' counsel has sought five extensions of time to file an opposition to Defendants' motion for summary judgment. ECF No. 75 at 10–11.

The Court will address the first and last arguments together. There is a record of delays in this case. However, the Court approved all of them. Initially, the delays in this case were pandemic related. Then, Plaintiffs filed a series of motions, and the Court granted each one of them. At this juncture, it would seem unfair to sanction Plaintiffs for these delays when the Court expressly permitted them. To be sure, the time has come for the parties to put the pedal to the metal—no further extensions of time will be granted in this matter. Defendants' allegations that Plaintiffs' counsel failed to complete the meet and confer process are troubling, and, if these derelictions continue, sanctions may well be appropriate. However, the record is also clear that Plaintiffs' counsel did attempt to work with

Defendants' counsel to create an agreed-upon statement of facts. As the Court's discussion below makes clear, while Plaintiffs' presentation of the issues leaves something to be desired, Plaintiffs' qualms with the statement of facts are not baseless.

As for Plaintiffs' failure to oppose each proposed fact with a specific citation to the record, the Court also finds that this is not sanctionable conduct. Plaintiffs refuse to stipulate to the entirety of Defendants' statement of facts because several facts hinge on testimony regarding Anderson's statements and actions, the credibility of which is for the jury to decide. *See* ECF No. 77-5 at 1 (Plaintiffs' counsel agreeing to stipulate to the fact that witnesses testified to Anderson's statements and actions, not that those statements and actions actually occurred).[1] Nonetheless, Plaintiffs agreed to stipulate to 39 of Defendants' 68 proposed facts. Plaintiffs acknowledge that twelve of the ostensibly disputed facts are essentially undisputed but subject to a "conclusory veneer" to which Plaintiffs object. ECF No. 78 at 7 (Plaintiffs' counsel suggesting that Defendants cite to "the exact language in the discovery, rather than paraphrasing it.").

---

[1] The parties spend some time bickering about the fact that Defendants included Anderson's declaration in support of its motion for summary judgment—apparently, Plaintiffs were caught off-guard. This ought to be water under the bridge: Plaintiffs' counsel sought and received an extension of time to depose Anderson. ECF No. 40. However, Plaintiffs' counsel now attempts to raise the specter of fraud regarding who signed the declaration. This is beyond the pale. According to Plaintiffs' own brief, Anderson testified, under oath, that the declaration submitted in support of the motion for summary judgment contained his signature. ECF No. 78 at 14–15. Plaintiffs' fly-ball attempt to introduce other documents that include Anderson's signature to call into question the veracity of the statements in the declaration is a poor use of time. Anderson has already been deposed on the statements in the declaration; any differences between the testimony and the declaration may be grounds for impeachment. The Court is not in the snake-oil business of handwriting analysis.

Page 6 of 11
Case 2:19-cv-01422-JPS   Filed 05/06/22   Page 6 of 11   Document 83

Plaintiffs' refusal to stipulate that Anderson's statements and actions actually occurred is somewhat reasonable. The record reflects that Anderson and Kaine each testified slightly differently regarding Anderson's statements and actions. Additionally, there appears to be a lack of non-testimonial evidence to support Defendants' version of events. Plaintiffs' failure to itemize disputed facts with pinpoint citations to the record appears to be bound up with the fact that witness credibility is at issue. While perhaps there was a more graceful way of disputing Defendants' proffered facts, i.e., with citations to the contradictory deposition testimony or to an attorney affidavit, the Court will not sanction Plaintiffs for endeavoring to raise a valid issue that is for the jury to decide. It is for the jury to determine whose memory to credit and which account, if any, to believe. Relatedly, Plaintiffs' request that Defendants quote from the discovery, rather than paraphrase the discovery, is both reasonable and, in many ways, ideal for a court deciding a summary judgment motion. For these reasons, dismissal as a sanction is unwarranted.

### 3. MOTION IN LIMINE

Plaintiffs' motion in limine ought to be denied outright for failing to conform with the Court's trial scheduling order, which delineates how parties should bring motions in limine. ECF No. 12. However, because the motion is fully briefed and essentially unmeritorious, the Court will address it so as to forestall another meritless motion in limine.

#### 3.1 Anderson's Statements

Plaintiffs' motion in limine seeks to exclude Anderson's statements because, Plaintiffs argue, Defendants failed to disclose Anderson's involvement in the case until their motion for summary judgment. Federal

Rule of Civil Procedure 37(c) permits sanctions, including dismissal, for the failure to disclose information that is required under Rule 26(a),(e)(1).

Defendants' initial disclosures identify Anderson, the third-party witness and tipster in this case, as an individual likely to have discoverable information. ECF No. 77-9 at 2. Similarly, in response to a discovery request, Defendants again identified Anderson as the tipster and provided his phone number. ECF No. 77-10 at 2–3. However, Defendants' counsel did not divulge that they were meeting with Anderson to prepare a declaration in support of summary judgment in response to one of Plaintiffs' discovery requests. At no point prior to summary judgment did Plaintiffs depose Anderson.

Plaintiffs argue that Anderson's declaration should be excluded as unreliable based on the woefully misled belief, discussed in footnote 1, *supra*, that Defendants' counsel forged Anderson's signature on the declaration page. Essentially, Plaintiffs attempt to impeach a non-party witness on the papers based on a totally specious theory of forgery. The Court has rejected that argument and will not waste any additional paper on that theory. Additionally, while it appears that Defendants ought to have responded to Plaintiffs' discovery with information regarding their meeting with Anderson, there is no harm here, as contemplated by Rule 37(c). Plaintiffs have had an opportunity to fully depose Anderson and they will have additional opportunity to cross-examine him at trial. If there are any discrepancies in Anderson's testimony, that may be grounds for impeachment.

In another attempt to undermine the propriety of Defendants' counsel's actions, Plaintiffs also write:

> Anderson's deposition testimony raises further issue with the circumstances surrounding the preparation and signing of this document. Regarding the document the Defense filed with this Court, Mr. Anderson testified that he signed the document. He further testified that he did not authorize anybody to submit the declaration without his signature. Mr. Anderson then testified that he physically signed the document at a meeting with Attorney Wolfgang in March 2020. At that same meeting, Attorney Wolfgang told Mr. Anderson, with whom Attorney Wolfgang has no attorney-client relationship, that Mr. Anderson should call him if Plaintiffs' counsel tries to contact him.

ECF No. 80 at 6–7. What nefariousness is the Court supposed to glean from this paragraph—that Defense counsel asked Anderson to call him if Plaintiffs' counsel tried to contact him? If this is outside the bounds of propriety for Wisconsin lawyers, Plaintiffs have failed to cite any law in support of their position. To the contrary, Wisconsin Supreme Court Rule 20:4.3 explains: "In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall inform such person of the lawyer's role in the matter. . . .The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client." In other words, the rules of professional conduct bar an attorney from giving legal advice to an unrepresented party *if* that unrepresented person's interests conflict with the lawyer's client's interests. Here, it is not at all apparent that Anderson's interests conflict with Defendants' interests. Moreover, the simple instruction, absent more, that Anderson call if Plaintiffs' counsel tries to get in contact is not clearly legal advice, either. In total, Plaintiffs have not demonstrated that Anderson's testimony should be excluded as unreliable or as a sanction.

### 3.2 Officers Kaine and Vetter's Statements

Plaintiffs also argue that Kaine and Vetter should be precluded from testifying about the statements that Anderson made to them because, Plaintiffs claim, those statements are hearsay, and there is no objective evidence (such as body-worn camera footage, notes, or call logs) to support whether those statements were made. The rule against hearsay prohibits out-of-court statements from being "offer[ed] in evidence *to prove the truth of the matter asserted in the statement*." Fed. R. Evid. 801(c) (emphasis added). "[S]tatements that are offered not to prove 'the truth of the matter asserted,' but for some other legitimate purpose, do not qualify as hearsay." *United States v. Bursey*, 85 F.3d 293, 296 (7th Cir. 1996) (citations and quotations omitted). An unsworn, out-of-court statement may be used to show motivation or state of mind. *Stewart v. Henderson*, 207 F.3d 374, 377 (7th Cir. 2000).

Plaintiffs argue that Kaine and Vetter's statements about Anderson's tip should be excluded because those statements seek to prove that Kaine stopped Plaintiff's vehicle based on a robbery report, rather than because of the race of the vehicle's occupants. Anderson reported a possible robbery to Kaine, who then reported this to other officers in the area and conducted the investigatory stop. A week later, Anderson contacted the police station to clarify that he was the unidentified witness. While these statements may be inadmissible for the truth of the matter asserted (i.e., that Anderson *said* a robbery occurred), they are admissible on the issues of 1) whether Kaine acted as a result of a statement; and 2) when police officers identified Anderson. *Henderson*, 207 F.3d at 377.

More to the point, Anderson can also testify that he made these statements (thus corroborating them, to the extent that Plaintiffs have any

concern about corroboration, ECF No. 80 at 2, *and* he can testify to the substance of his statements. Plaintiffs' counsel may test the credibility of Anderson, Kaine, and Vetter's testimonies by way of vigorous cross examination; it is wholly inappropriate for the Court to make any kind of credibility determination at this stage. *Anderson*, 477 U.S. at 249.

4. **CONCLUSION**

It has long been the position of this Court that parties represented by competent counsel will be able to sort through discovery issues and make reasoned determinations about their cases based on the law and the evidence in the record. The parties' motions demonstrate an unwillingness to take a reasonable approach to litigation. The parties must diligently work together to prepare the case for trial or resolution. Moving forward, **absolutely no extensions of time will be granted under any circumstances**. If there is any concern that counsel will be unable to litigate the matter under these constraints, then they must staff additional attorneys on the case or employ competent co-counsel to assist with the matter.

Accordingly,

**IT IS ORDERED** that Defendants' motion for sanctions and dismissal, ECF No. 74, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiffs' motions in limine, ECF Nos. 80 & 82, be and the same are hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 6th day of May, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge