UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| AKIL K. CARTER, PAULETTE H. BARR, and SANDRA K. ADAMS, | |
| Plaintiffs, | Case No. 19-CV-1422-JPS |
| v. | |
| PATRICK KAINE, | **ORDER** |
| Defendant. | |

Plaintiffs in this matter, Akil Carter ("Carter"), Paulette Barr, and Sandra Adams (collectively, "Plaintiffs"), sued Defendants the City of Wauwatosa ("Wauwatosa"), Patrick Kaine ("Kaine"), Chief of Police James MacGillis ("MacGillis"),[1] Luke Vetter ("Vetter"), Nicole Gabriel ("Gabriel"), and Derek Dienhart ("Dienhart") (collectively, for purposes of this Order, "Defendants"). ECF No. 1-2. The matter was tried to a jury beginning on March 13, 2023. During trial, Defendants moved pursuant to Federal Rule of Civil Procedure 54(b) to dismiss all Defendants except Kaine, and to dismiss Plaintiffs' claim pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and the Court took the motion under advisement. ECF No. 149 at 5. Ultimately, only four questions were submitted to the jury: (1) whether Kaine seized Plaintiffs without reasonable suspicion on September 2, 2018; (2) if so, whether any Plaintiff was entitled to any compensatory damages; (3) if Kaine seized Plaintiffs without reasonable suspicion, whether he did so in reckless disregard of

---

[1] MacGillis was substituted for Barry Weber, prior Wauwatosa Chief of Police, pursuant to Plaintiffs' statement that the Weber was named as a Defendant only in his official capacity. ECF No. 18 at 1, n.1.

Plaintiffs' rights; and (4) if Kaine acted with reckless disregard, whether Plaintiffs were entitled to punitive damages. ECF No. 152 at 1–2.

On March 14, 2023, the jury rendered a Special Verdict and found that Kaine did not seize Plaintiffs without reasonable suspicion on September 2, 2018, and therefore did not answer any questions as to reckless disregard or damages. *Id.* The Court issues this Order contemporaneously with entry of Judgment to clarify the disposition of certain claims and Defendants which were not subject to the jury's Special Verdict.

1. **ADDITIONAL PUTATIVE FOURTH AMENDMENT CLAIMS**

The Complaint listed, as Count One, a single count of "Violations of the Plaintiffs' Civil Rights Under 42 U.S.C. § 1983," alleged against all Defendants. ECF No. 1-2 at 11. As the Court recognized on summary judgment, this count unquestionably includes an unreasonable seizure claim that Kaine initiated a traffic stop[2] of Plaintiffs' vehicle without reasonable suspicion to do so. ECF No. 108 at 20–28. When considering the parties' competing motions for summary judgment, the Court adopted Defendants' further construction of this count. ECF No. 108 at 2, n.3. Specifically, the Court—in response to Defendants' arguments—examined Count One as *potentially* articulating two additional, distinct factual bases for a Fourth Amendment claim:

- A claim that Defendants Kaine, Luke Vetter ("Vetter"), Nicole Gabriel ("Gabriel"), and Derek Dienhart ("Dienhart") conducted

---

[2] The Court stated on the record during trial its finding that the traffic stop at issue was a brief investigative stop, pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), rather than a full custodial arrest. ECF No. 149 at 1.

Page 2 of 14
Case 2:19-cv-01422-JPS   Filed 05/04/23   Page 2 of 14   Document 165

- the ensuing investigation in an unreasonable manner that exceeded the scope of the facts that first justified it, *id.* at 28–31;[3]
- A claim that Kaine, Vetter, Gabriel, and Dienhart used excessive force in conducting the traffic stop of Plaintiffs, or that Vetter failed to intervene in Kaine's use of excessive force, *id.* at 31–33.

The Court expressly noted Defendants' position that Plaintiffs had not sufficiently pleaded an excessive force claim, and generally had failed to specify which Defendants were subject to which counts and claims. *Id.* at 18, n.16.[4] Ultimately, the Court denied the cross-motions for summary judgment, due to the core question—whether Kaine had reasonable suspicion to stop Plaintiffs' vehicle—being the subject of a factual dispute, the resolution of which required a jury's fact and credibility determinations. *See id.* at 20–33.

All possible Fourth Amendment claims have been disposed of as follows. The jury found for Kaine on the question of reasonable suspicion, and the unreasonable seizure claim was never properly alleged as to Vetter,

---

[3]The Court found definitively that Vetter, Gabriel, and Dienhart had no personal involvement in *initiating* the stop so could not be held liable on a unreasonable seizure theory. ECF No. 108 at 29–30.

[4]The Court failed to state expressly at summary judgment that any Fourth Amendment claim for direct-involvement liability was not properly alleged as to MacGillis (then Weber) and Wauwatosa. For the avoidance of doubt, the Court finds that MacGillis and Wauwatosa were never properly named as Defendants in Count One. This is because Plaintiffs stated MacGillis was only sued in his official capacity as Chief of Police and moreover made no allegations that then-Chief Weber was on the scene at the time of the subject events, *see* ECF No. 104 at 3, and therefore, as a matter of law, MacGillis and Wauwatosa can only be held liable for a violation of Plaintiffs' Constitutional rights on an official-policy theory of liability, not a direct-involvement theory. *See Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 689–90 (1978). Excluding this determination on summary judgment was an oversight, but the parties essentially never disputed that McGillis and Wauwatosa could not be liable as to Count One; the outcome then would have been the same as it is now.

Gabriel, and Dienhart. *See supra* note 3. An unreasonable investigation claim only ever existed to the extent that Defendants construed the Complaint as supporting such a claim, and moreover Plaintiffs did not press a "scope of investigation" claim in any of their pretrial filings. *See* ECF No. 125-7 at 1 (parties' joint proposed special verdict forms, articulating only an unreasonable seizure claim as to Kaine, Vetter, Gabriel, and Dienhart); ECF No. 125-5 (Plaintiffs' additional requested jury instructions, which do not include any instructions as to an unreasonable investigation claim); ECF No. 125-8 (Plaintiffs' additional requested special verdict forms, which do not include forms as to an unreasonable investigation claim). The Court therefore considers any unreasonable investigation claim abandoned as to Kaine, Vetter, Gabriel, and Dienhart. *See Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) (deeming abandoned claims on which party presented no evidence and did not raise in briefing).

To the extent an excessive force claim ever existed in this case—which Defendants challenged both on summary judgment and in a motion *in limine*, *see* ECF No. 124-1 at 17—Plaintiffs also effectively abandoned any such claim.[5] Although Plaintiffs opposed Defendants' motion *in limine* on the basis that such a claim was sufficiently pleaded, Plaintiffs' pretrial filings did not reflect that they were seriously pressing this claim. *See* ECF

---

[5]Parenthetically, in light of the jury's determination that Kaine had reasonable suspicion to initiate a traffic stop of Plaintiffs (and in light of the fact that the parties have never disputed that the potential crime alleged as the basis for the stop was a robbery), it is doubtful that a jury presented with the question would have determined Kaine, Vetter, Gabriel, and/or Dienhart used excessive force in conducting the investigation. In any event, Plaintiffs have argued variously that either ordering Carter to his knees, handcuffing him, seating him in the back seat of a police vehicle while handcuffed, and/or the drawing of weapons, or some combination thereof, was excessive. This ill-defined theory of what act or acts of force were excessive makes it impossible for the Court to decide what case law might be on point.

No. 125-5 (Plaintiffs' additional requested jury instructions, which do not include any instructions as to an excessive force claim); ECF No. 125-8 (Plaintiffs' additional requested special verdict forms, which do not include forms as to an excessive force claim). It is also true that Plaintiffs' several filings on the eve of trial make offers of proof that, if liberally construed, could pertain to an excessive force claim. *See, e.g.*, ECF No. 141 at 3–4 (Plaintiffs' objections to Court's proposed verdict form, offering evidence that Kaine and Dienhart drew firearms). But "[i]t is not the responsibility of this Court or opposing counsel to try and piece together all potential theories of the case from scattered and opaque fragments in the [pretrial submissions] . . . ." *McFarland v. Tricam Indus., Inc.*, No. 13 C 4576, 2015 WL 3442027, at *5 (N.D. Ill. May 28, 2015), *aff'd*, 667 F. App'x 164 (7th Cir. 2016) (rejecting plaintiff's contention that references to certain theories of liability raised in pretrial submissions were a sufficient basis for the court to allow plaintiff to present evidence related to those theories at trial). Accordingly, any excessive force claim is deemed abandoned. For the same reasons, the Court considers abandoned any claim that Vetter (or any Gabriel or Dienhart, for that matter)[6] failed to intervene in a use of excessive force.

As should be evident from the above descriptions, Plaintiffs litigated this case in a manner that, to put it diplomatically, profoundly confused the Court as to what legal questions Plaintiffs viewed as actually in controversy, and why. (To be sure, there is plenty of blame to go around: Defendants could have addressed the above-described pleading snafus

---

[6]Plaintiffs' objections to the Court's proposed verdict form gesture at a failure to intervene claim as to Dienhart and Gabriel. *See* ECF No. 141 at 4. This was the first time the Court was aware of a failure to intervene claim being alleged as to these two Defendants. It should go without saying that claims apparently delineated for the first time in an offer of proof are not sufficiently pleaded so as to give the opposing party adequate notice to respond.

with an early motion to dismiss, a motion for a more definite statement, or simply by identifying them to opposing counsel and not opposing the filing of an amended complaint.) As a result, and based on the observation that "the core issue in this case, indeed the issue on which all the other claims turn, is whether Officer Kaine had reasonable suspicion to initiate the vehicle stop of Plaintiffs," ECF No. 140 at 4, the Court in its discretion proposed submitting, and indeed did submit, only an unreasonable seizure claim as to Kaine to the jury, rather than adopt Plaintiffs' other amorphous theories of Fourth Amendment liability. *See* ECF No. 132 at 1. Based on the jury's resolution of that question and the Court's determinations above, the Fourth Amendment claims as to all other Defendants—to the extent they were sufficiently pleaded to begin with—are dismissed.

**2.    *MONELL* CLAIM**

In Count Two of their Complaint, Plaintiffs alleged a count of municipal liability, pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), arising from the alleged violation of Plaintiffs' constitutional rights.[7] ECF No. 1-2 at 11–16. Shortly before trial, and at the invitation of the Court, Plaintiffs made an offer of proof related to their *Monell* claim. ECF Nos. 141 at 4–10. The *Monell* claim was subject to a Rule 54(b) motion by Defendants, which the Court took under advisement. ECF No. 149 at 5. Ultimately, this claim was not submitted to

---

[7]Plaintiffs' theory of *Monell* liability, like their Fourth Amendment claim(s), is imprecise. One of Plaintiffs' pretrial filings demonstrates that they, at one point, represented to Defendants that they had two theories for their municipal liability claim: (1) that Wauwatosa had a de facto policy of racial profiling in traffic stops and (2) that Wauwatosa failed to train or supervise its officers to avoid unconstitutional seizures. ECF No. 125-5 at 30–31. Indeed, these are the theories that the Court examined on summary judgment. ECF No. 108 at 33–35. But in that very same document, Plaintiffs request inclusion of jury instructions for a third *Monell* theory that then-Chief Weber ratified the Defendant officers' conduct. ECF No. 125-5 at 14–15.

Page 6 of 14
Case 2:19-cv-01422-JPS   Filed 05/04/23   Page 6 of 14   Document 165

the jury. Because Plaintiffs failed to establish an underlying Constitutional violation, the *Monell* claim is essentially moot. Accordingly, although it survived summary judgment, *see* ECF No. 108 at 33–35, it will now stand dismissed.[8]

**3.    STATE LAW CLAIMS**

In addition to their federal claims, Plaintiffs alleged an array of state law claims, including:

- A negligence claim based on the circumstances under which the traffic stop was initiated and continued, Count Three of the Complaint;
- Claims under the Wisconsin Constitution for violations of the rights to due process, to equal treatment, and to be free from unreasonable search and seizure, Counts Four, Five, and Six of the Complaint;
- A negligent infliction of emotional distress claim, Count Seven of the Complaint;
- A negligent hiring, training, and promotion claim, Count Eight of the Complaint;
- A false imprisonment claim, Count Nine of the Complaint; and
- An intentional infliction of emotional distress claim, Count Ten of the Complaint.

*See* ECF No. 1-2 at 16–20.[9] At summary judgment, the Court—while acknowledging Defendants' argument that Plaintiffs' state law claims were

---

[8]Plaintiffs' requests for "declaratory, injunctive, and other equitable relief reforming the Defendant City of Wauwatosa policies, practices, and procedures," *see* ECF No. 1-2 at 21, also must be dismissed because Plaintiffs have failed to prove any underlying Constitutional violation requiring redress.

[9]As Defendants pointed out in moving for summary judgment, some of the state law claims are pleaded as to *all* Defendants rather than specifying which

barred as a matter of law on either state sovereign immunity or governmental actor immunity grounds—declined to reach the merits of any state law claims given the factual dispute surrounding the federal claim. ECF No. 108 at 35–36.

The parties' pretrial submissions reflected their agreement as to jury instructions and special verdict forms on Plaintiffs' claims of negligence; negligent infliction of emotional distress; negligent hiring, training and promotion; false imprisonment; and intentional infliction of emotional distress. *See* ECF No. 125-4 at 39, 44–49; ECF No. 125-7. Defendants did not agree to Plaintiffs' proffered jury instructions or special verdict forms as to their three Wisconsin Constitutional claims. *See* ECF No. 125-5 at 19–23; ECF No. 125-8 at 5–6.

At trial, during the jury instructions conference, Plaintiffs objected to the exclusion of instructions and verdict forms on certain of their state law claims, on the basis that Defendants had agreed to the wording of the instructions and verdict forms related to those claims. ECF No. 149 at 13; *see also* ECF No. 155 at 4 (Plaintiffs' counsel objecting to the Court's exclusion of the parties' agreed-upon instructions as to "negligence, false imprisonment"). Defendants stated that the parties' agreement on those instructions and verdict forms did not necessarily indicate that Defendants conceded they were sufficiently pleaded. *Id.* at 14. When the Court prompted Plaintiffs for an offer of proof on the state law negligence claims as to Kaine, Vetter, Gabriel, and Dienhart, Plaintiffs responded that Defendants have a common law duty to Plaintiffs to uphold the Constitution and use the least restrictive means to conduct the traffic stop.

---

Defendant did what with respect to whom (or explaining how a municipality could be liable in tort for negligent infliction of emotional distress). *See* ECF No. 108 at 18, n.6.

*Id.* Defendants countered that this was not enough to sustain the duty element of a negligence claim. ECF No. 155 at 6–7. That was the end of the matter; Plaintiffs raised no other substantive discussion of the instructions or verdict forms as to their state law claims in tort, nor made a case for inclusion of instructions or verdict forms on their Wisconsin constitutional claims. *See* ECF No. 149 at 13–15.

The Court will retain jurisdiction over Plaintiffs' state law claims in order to dismiss them.[10] The Court revisits and concurs in Defendants' arguments at summary judgment that Wisconsin's governmental immunity doctrine bars Plaintiffs' state law claims in tort. ECF No. 97 at 23–28. "Under Wisconsin law, the doctrine of governmental immunity is quite broad." *Est. of Perry v. Wenzel*, 872 F.3d 439, 462 (7th Cir. 2017). "The rule of governmental immunity provides that state officers and employees are immune from personal liability for injuries resulting from acts performed within the scope of their official duties." *Pries v. McMillon*, 784 N.W.2d 648, ¶ 20 (Wis. 2010). This has been interpreted to immunize all conduct that "involve[s] the exercise of discretion and judgment." *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 691 N.W.2d 658, ¶ 54 (Wis. 2005). "Public officer immunity does not apply to: (1) the performance of ministerial

---

[10]Although all federal claims in this case have either been resolved by the jury or dismissed by the Court, the Court will exercise its discretion to retain supplemental jurisdiction over the state law claims. *See Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906–07 (7th Cir. 2007) (affirming district court's relinquishment of state law claim that remained after trial, appeal, and remand, but noting that supplemental jurisdiction may be retained where, for example, "substantial federal judicial resources have already been expended on the resolution of the supplemental claims" or "where it is obvious how the claims should be decided"). Although the Court's summary judgment order declined to reach the merits of the state law claims, as explained in the balance of this section, resolution of these claims is fairly straightforward. This consideration, together with the consideration of judicial economy, both counsel in favor of exercising supplemental jurisdiction.

duties; (2) the performance of duties with respect to a known danger; (3) actions involving medical discretion; and (4) actions that are malicious, willful, and intentional." *Bicknese v. Sutula*, 660 N.W.2d 289, ¶ 17 (Wis. 2003) (citation and internal quotation marks omitted).

None of these exceptions to governmental immunity applies. The known danger and medical discretion exceptions are clearly inapplicable based on the facts of this case. Plaintiffs have made no serious argument that Kaine was not exercising discretion in deciding to stop Plaintiffs' vehicle, and no serious argument that Vetter, Gabriel, and Dienhart were not exercising discretion in how they responded to Kaine's radio call for backup and how they acted on scene. Indeed, Plaintiffs' entire case rests on the notion that each of these four officers had alternative choices about what to do in the situation with which they were presented (for example, Kaine's choice to either act or not act on Carl Anderson's tip, and Dienhart's choice to either draw or not draw his service weapon in response to Kaine's report that he was responding to a robbery). Because Kaine, Vetter, Gabriel, and Dienhart were clearly exercising discretion in the discharge of their duties, the ministerial duty exception cannot be said to apply. *Cf. Sheridan v. City of Janesville*, 474 N.W.2d 799, 802 (Wis. 1991) (holding that decisions about initiating an arrest and using force are discretionary).

The jury's finding that Kaine had reasonable suspicion to stop Plaintiffs' vehicle is fundamentally incompatible with a finding that he acted in a manner that was malicious, willful, and intentional, i.e., that he stopped them for no good reason. The record is also utterly devoid of any evidence that Vetter, Gabriel, or Dienhart acted with malice, willfulness, or intent in participating in the investigation—they were relying on Kaine's representations as to the nature of the stop and the risks it posed. This exception—to the extent it even makes coherent sense as an exception to

immunity for *negligence* liability, which is subject to debate, *see Price as next friend of J.K. v. Mueller-Owens*, 516 F. Supp. 3d 816, 831 (W.D. Wis. 2021) (collecting and comparing cases)—does not apply either.

Accordingly, Plaintiffs' claims rooted in negligence—Counts Three, Seven, and Eight—are barred by the doctrine of governmental immunity and must be dismissed.[11] Similarly, Count Nine, a false imprisonment claim, is barred by the doctrine of governmental immunity, and in any event cannot be sustained in light of the jury's finding that Kaine lawfully seized Plaintiffs. Finally, Count Ten, an intentional infliction of emotional distress claim, is also barred due to governmental immunity, and as noted above, is not supported with any proof in the record that any of the officer Defendants acted with intent to cause harm.

Counts Four, Five, and Six, Plaintiffs' Wisconsin constitutional claims, must be dismissed because—even assuming Plaintiffs could actually prove such violations, which is in doubt in light of the jury's finding—"suits for damages are not permissible for violations of the Wisconsin Constitution" except in certain circumstances inapplicable here. *Maxwell v. Outagamie County Jail*, No. 20-CV-386, 2022 WL 17300881, at *4 (E.D. Wis. Nov. 29, 2022). This is true even when a municipality (rather than a state actor to whom state sovereign immunity applies) is alleged to have committed the violation. *Id.* (dismissing Wisconsin constitution count alleged against municipality); *see also Schworck v. City of Madison*, No. 19-CV-312-WMC, 2021 WL 1820779, at *19 (W.D. Wis. May 6, 2021), *aff'd as modified on other grounds*, No. 21-2055, 2022 WL 832053 (7th Cir. Mar. 21,

---

[11]This, of course, sets aside the question of what Defendants' duty, beyond upholding the federal Constitution, even was. The Court does not answer that question because the parties have not briefed it, but notes that Plaintiffs' arguments on this issue at trial were rather unpersuasive.

2022) (same); *Harper v. Giese*, No. 20-CV-493-PP, 2020 WL 7047822, at *8 (E.D. Wis. Dec. 1, 2020) (same). To the extent Plaintiffs' request for declaratory, injunctive, or equitable relief from Wauwatosa policies, practices, or procedures was intended to apply to these counts, such relief cannot be granted because the allegations in support of those counts make no mention of any Wauwatosa policy, practice, or procedure that led to the alleged violations of the state constitution. *See* ECF No. 1-2 at 16–18.

### 4. CONCLUSION

Based on the foregoing, the Court dismisses Counts Two through Ten of Plaintiffs' complaint, as well as Count One insofar as it may have been construed as a Fourth Amendment claim of unreasonable investigation, excessive force, and/or failure to intervene. The Court dismisses Plaintiffs' requests for declaratory, injunctive, or equitable relief. Because no claims remain against Defendants the City of Wauwatosa, James MacGillis, Luke Vetter, Nicole Gabriel, and Derek Dienhart, these Defendants are dismissed.

Accordingly,

**IT IS ORDERED** that Count One of Plaintiffs' Complaint, ECF No. 1-2, be and the same is hereby **DISMISSED** insofar as it may have been construed as a Fourth Amendment claim of unreasonable investigation, excessive force, and/or failure to intervene;

**IT IS FURTHER ORDERED** that Count Two of Plaintiffs' Complaint, a claim of liability pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), be and the same is hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that Count Three of Plaintiffs' Complaint, a claim of negligence based on the circumstances under which

the traffic stop was initiated and continued, be and the same is hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that Counts Four, Five, and Six of Plaintiffs' Complaint, Wisconsin constitutional claims for due process, to equal treatment, and to be free from unreasonable search and seizure, be and the same are hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that Count Seven of Plaintiffs' Complaint, a claim of negligent infliction of emotional distress, be and the same is hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that Count Eight of Plaintiffs' Complaint, a claim of negligent hiring, training, and promotion, be and the same is hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that Count Nine of Plaintiffs' Complaint, a claim of false imprisonment, be and the same is hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that Count Ten of Plaintiffs' Complaint, a claim of intentional infliction of emotional distress, be and the same is hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that Plaintiffs' requests for declaratory, injunctive, or other equitable relief be and the same are hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that the City of Wauwatosa, James MacGillis, Luke Vetter, Nicole Gabriel, and Derek Dienhart be and the same are hereby **DISMISSED** from this action; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** on the merits, together with Defendants' costs as may be taxed by the Clerk of the Court.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 4th day of May, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge